Mr. Zimmerman, we'll just let everybody clear out just a minute. You have reserved two minutes for rebuttal, so that gives you eight to start. Thank you. And I think we're good to go. May it please the Court. A gun is not supposed to discharge when it is secured in its holster and when the user doesn't touch the trigger. That is what happened here. Sergeant Michael Colwell suffered injuries when his holstered Sig Sauer P-320 fired during a routine training exercise in connection with his duties for the Troy Police Department. Like many other P-320 users, his hand and his finger never touched the trigger. So, if Sergeant Colwell's finger did not touch the trigger, the parties agree that only a foreign object could have caused the trigger to become actuated to fire. A trigger safety that was used by every other gunmaker who made this type of gun would have prevented this incident. But, I mean, that's the ballgame, right? Of course. I mean, you called experts who couldn't seem to me to exactly say that, in part because it wasn't clear what pulled the trigger. They cannot state with certainty, but certainty is not the standard. They testified at deposition and wrote in their expert reports, to a reasonable degree of certainty, that the front face of the trigger in a holstered weapon would not have been contacted. It seems to me all they really said was that having a safety or a tabbed trigger would have made a gun less likely to fire. But that doesn't mean it would have made the gun not fire in this case or in comparable cases. And so that's usually why you get an expert to say, okay, we're going to replicate what took place here and show that, yeah, when you do what Sergeant Colwell said happens, this gun fires. And when you do the same thing, same movements, with a lock, it doesn't fire. But there's nothing like that, right? Your Honor, what's instructive is the other appellate courts who have determined this issue. In Davis and Slutowski, the user did not have his hand on the gun. In Herman, the plaintiff could not testify whether his hand was on the gun or not. And that was a distinguishing factor in Herman. So for these experts, they analyzed not only whether a trigger safety can prevent the gun from moving backwards, but in a situation where the gun is holstered, whether it would be probable for something to get into the holster, turn around over the front face of the trigger, and pull backwards. That's the issue in this case, is that if we are to accept Mr. Colwell's version of events, that the gun is holstered, which at the summary judgment stage we must do, then the issue is, would it have been more likely than not that the front face of the trigger, if there was foreign object contact, would have been the area that was touched? And both experts – But if there was foreign object contact, there's pure speculation as to what that was and how it transpired, right? The experts do not know what foreign object touched the trigger. It doesn't seem that Sergeant Colwell knows either. Correct. So the only thing Sergeant Colwell can describe is the movements he made. And if you did that a thousand times with a robot or with somebody else wearing protective gear, then maybe you could show that that's enough to make this gun fire. But there was nothing like that, right? So Mr. Colwell, you are right, cannot talk about what foreign object contacted the trigger. He can't say my movement was this or that in terms of precise accuracy as to millimeters of movement. What he did testify to was that his hand was off the gun, and everyone agrees that a foreign object is the only other thing that could cause the gun to fire. But you didn't put in any evidence. You didn't put any evidence raising a disputed issue of fact about a foreign object. You did put in evidence that he didn't have his hand on the gun because he said in his deposition that he was reaching for his taser, having already completed putting the gun in the holster. But you didn't put any evidence of any kind in to exclude the possibility of a foreign object having been present in a manner that put pressure on the trigger. We agree. A foreign object did put pressure on the trigger. Your contention is not that the gun spontaneously went off. Your experts, their experts, the lawyers on both sides all agree that the gun couldn't go off spontaneously all on its own. Our experts accept that the gun does not fire absent trigger actuation. Right. Our experts rely upon Mr. Colwell's testimony to say his hand was not on the gun. So if the trigger moved back. So you've got what you've got here. Put the experts entirely to one side for the moment. What you've got here is a situation where everyone agrees that the gun did not spontaneously go off. There is a disputed issue of fact, I suppose. There is a disputed issue of fact, right? Sergeant Colwell says, I didn't touch it. I didn't pull the trigger. The defendant is perfectly entitled to ask the jury not to believe that. And the jury will assess his credibility. But in light of those facts, the only thing that remains is the possibility if the jury accepts his version, all that remains is that something must have hit the trigger. Correct. Right? That's your position. It is. And that's just common sense. That doesn't require an expert to tell you that. Except that, except that, what is in dispute is what kinds of things are internal and external to the gun that would prevent or could prevent a foreign object from setting off the trigger. That's what the experts need to talk about. But the causation as such, what caused the accident, it either is or isn't a problem with your case that you don't even have a theory of that, right? I mean, it's a foreign object, but this isn't taking place with debris falling down. There's no particular reason to say that he had keys or something else or some other thing on the officer's belt that might have hit the holster. We don't know anything about that, about what it actually was. Right. So if that's not sufficient, then you lose, right? Well, no, Your Honor. No? So the issue is not what foreign object contacted the trigger. It is in a scenario where the gun is fully holstered and contact is made, where on the trigger would it be most likely to be made? There are two issues before this Court. Number one, the experts' defect opinions were accepted by the lower court. And that's not on appeal here. That is not on appeal. The only issue is whether they can testify as to causation. Issue two is whether expert testimony on causation is even required. Well, yes, but I'm getting back to issue one for the moment. Yes. Judge Bibas for the Third Circuit agreed with the proposition that the experts could not testify about causation as such because they don't know what happened. The position of the Third Circuit is that the jury could find, based on the officer's testimony, that he didn't set it off. Correct. And that common sense suggests the only other thing that could set it off is something else, not his finger, contacting the trigger. Correct. And then what the experts have told us is how this trigger can be set off, while a different style of trigger with a trigger tab could not be set off as easily, to say the least. That is what Slutowski held on appeal and what Davis essentially held on appeal. Two trial courts held that the experts could testify as to causation. Those two courts, Slutowski and Davis, said that while the experts could not testify on that issue, the jurors could use their common sense and the additional evidence, the circumstantial evidence in the cases, to come to that conclusion. And then there is Herman, which is a case that was upheld on appeal for the defense, which, in that case, the individual ---- You can count heads on all the judges who passed on this. It comes out of counting the district judges and the court of appeals judges, allowing for the fact that there was a dissent in one of the cases that was allowed to go forward. It comes out about even. It's obviously a close and difficult issue. But your position, I take it, yes, you want them to be able to opine on causation, but your position is also that even if their opinion on causation is excluded, if they are allowed to testify, as I don't think anyone really disagrees, about how these different mechanisms operate, they're sufficiently expert to know all that stuff, which I don't know. You know, I thought that a safety means the thing you switch with your thumb. That is one. But that turns out to be not the only one. There are other external ---- I don't know anything about this. I assume many New York jurors do not. But that's what the experts can explain. They can explain that. Their opinions on design defect have not been struck by the lower court. And there are ample cases that hold that expert testimony is not required. The defense briefs ---- The judge didn't require expert testimony. Judge Sanis didn't say, didn't make her summary judgment opinion based on the fact that the expert testimony as to causation had been stricken. She based it on the fact that you had failed to exclude other possibilities than the one that you ---- the hypothesis that you were advocating for, that you had failed to exclude primarily the possibility that some cloth or some foreign object had put pressure on the trigger. Your Honor, respectfully, we are not excluding that. That is our case. That is our theory. But your ---- but, you know, you had the expert testify as to causation. The expert can't testify as to causation because the expert doesn't know what happened. The expert's expertise doesn't extend to what happened when this incident occurred. And so you left it open for the judge to strike one part of your expert's testimony appropriately because the expert was going beyond the basis in the evidence in that regard. But then when it comes to summary judgment, you know, you ---- if you wanted to not have summary judgment, you had to exclude the various reasons that were not consistent with the plaintiff's  And you excluded one of them, the finger on the trigger, but you didn't exclude the other. For clarification, Your Honor, that is our theory, that a foreign object contacted the trigger. And our expert performed testing as to under what circumstances. And regardless of the expert's testing and whether they can testify as to causation, which some judges have determined they could not, it is up to the jury to be able to make that determination. There are quotes from both Davis and Slutowski that are identical here. I should probably save my time for rebuttal unless Your Honor will allow. A switch of the sort that Judge Lynch was talking about would not have prevented that, right, if there was a manual switch that would turn the judge on and off. That would depend on whether the holder of the gun had turned it off. So there are two safeties. One is a manual thumb safety that turns on and off. If it was off, it would do nothing. If it was on, it would be impossible for the trigger to move backwards. The other safety is a trigger safety, which essentially substantially minimizes the surface area of the trigger where contact can be made to make the gunfire. On the sides, on the bottom, on the top of the trigger, those areas, if subjected to foreign contact, foreign object pressure, would not cause the gun to fire. No, but I think we get that. But it seems to me all your expert is saying that a gun with a safety would be safer as a general matter. And that's not the issue. The issue is would a gun with a safety have prevented the firing in a case where the cause was the one that took place here, right? There was additional analysis in a situation where the gun is in a holster as to whether it would be more likely that the area of the trigger that would be contacted would be any of those, if you think of a tic-tac-toe box, any of the eight areas that don't have the tab or the area on the front that has the tab. But if you don't know that that's what caused, I mean, in other words, if the foreign object that everybody's just guessing about here would have depressed the tab safety on the Glock just as squarely as the Sig Sauer was pressed and therefore fired, then you don't have a case, right? And that goes to whether we can prove certainty or whether we need to prove certainty. I agree with you. If the foreign object contacted the front face of the trigger on a Glock and depressed the tab trigger, pulled the gun, the trigger back, the gun fires. No debate there. But before you say no debate there, you really want to use the word contacted in that situation? I mean, isn't the point that not only would the foreign object have to hit the precise place where the tab is in order to make the gun fire, it would also have to hit it with considerable force? Not as much force would be necessary to trigger the gun if it missed that spot. So the force required for the tab to move backwards is about a pound and a half of force. The trigger weight, the weight required to move the trigger backwards is about four to six pounds. So while there is force required for the tab, it is our position that it's the placement of the contact. I see. So it's roughly the same force that would set it off. It's just a question of where it hits. In Canada, there is lower force on the tab required to move the tab than for the trigger to actuate. I see. Okay. But the issue is what is more likely. So what you're saying is what everyone, what common sense would suggest, is that if Sergeant Colwell is telling the truth about he'd already holstered the gun and his hand was elsewhere doing other things when this occurred, the only explanation is a foreign object hitting. And the expert's testimony, not in terms of an opinion on causation, but in terms of their explanation of the mechanics, is that if there was a tab trigger, a tab trigger lock on the gun, essentially this would have to hit the middle of the strike zone. This would have to be a perfect pitch from the foreign object to make this gun go, to make a gun with a tab go off. While anything remotely in the strike zone that contacts the trigger without such a tab will set off that gun. And, therefore, it is more likely than not that a tab safety would have prevented the gun from going off. Yes, Your Honor. And, in addition, there are incident videos that the expert or the jury can review and rely upon for types of foreign objects that are able to get inside of a trigger and whether they can actually make a left-hand turn, go up and take that strike zone and reduce it from nine-ninths to one-ninth. Thank you. Am I correct that, going back to an earlier question, there are three kinds of guards that are provided by other manufacturers, right? Other manufacturers provide either an on-off switch that you can activate with your thumb, you can turn it on or off, or the tab that requires pressure in exactly the right place and with the right force on the trigger, or the third one is on the handle. Now, if what was provided here had been, if this gun had had the on-off switch that, with your thumb, you could simply deactivate it so the trigger couldn't be pulled, that would have done nothing to prevent the accident if it had not been manually adjusted. Isn't that right? If there was only a manual thumb safety, that was off. But I will just say that gun manufacturers don't just choose one. There are many gun manufacturers who have more than one. So there are guns out there that have a manual thumb safety and a tab trigger, or a tab trigger and a grip safety. This is unique in its design. This has no safety. There are none who provide only the, none of the manufacturers provide only the on-off switch? I believe there are manufacturers who only provide the on-off switch. My point was just that Sig Sauer is unique in providing none. Didn't Sergeant Colwell testify in his deposition that he would have had the safety on if there was one? Yes, that's the policy and protocol. And that's indeed what police officers are supposed to do. Correct. That, of course, would again be a credibility judgment for the jury, and I believe there was, was there, am I wrong, that there was evidence that he actually owned a gun that didn't have such a safety? He did. Okay. So, again, that would be a credibility issue as to is he as careful as he says he is with respect to that. But, again, it seems to me if the question is would the thumb safety, it's like a seatbelt, right? If you have a car without seatbelts, there are going to be more injuries from accidents. The lack of a seatbelt doesn't cause the accident, just as the lack of the trigger safety doesn't, isn't what makes the gun go off. What makes the gun go off is the firing object or the finger or whatever. But, you know, it may be that if you had the seatbelts in the car, some drivers wouldn't use them, right? Yes. That's up to the jury to decide, I suppose, if there were such a thing anymore as a car without seatbelts, and that was alleged to be a design defect. Yes. The jury would have to decide is this guy a reckless guy or a careful guy? If he brings in 20 bishops who've ridden with him in his car and testifies that he always clicks the belt first and makes them do it, too, the jury could believe that. And the fact that the seatbelt wouldn't have helped if he hadn't used it would not grant summary judgment for the defendant. Correct, Your Honor. Okay. Thank you. You're reserved two minutes for a vote. Thank you. Mr. Lasker. May I please the Court, Your Honor? Art Lasker on behalf of the appellee, Sig Sauer. I'd like to just start off on this issue of the thumb safety. There is not actually evidence in this record that Mr. Caldwell would have used the thumb safety. The district court correctly recognized there was no evidence that presented the thumb safety. Can you say something about his grandfather? Am I confusing you with one of the other cases? I think you're confusing me with one of the other cases. That was one of the other cases. In this case, the gun that he had was given to him by his police department that made the determination not to have thumb safeties. Sig Sauer offers the P320 with the option of a thumb safety. And in this case, the police department said we don't want thumb safeties on our guns, and this accident happened in the course of a training exercise. So there's no evidence that there would have been the manual thumb safety would have been used. And that, of course, is an issue for the plaintiffs under New York law, the optional equipment doctrine. But the key issue here, Your Honor, is the plaintiff did not submit an affidavit, did he? The plaintiff was examined on a deposition, but I didn't see an affidavit of the plaintiff. There wasn't one, was there? Not that I'm aware of, and certainly nothing that has been raised on appeal. And I think, Your Honor, it's hit upon the key issue here. The judge, the district court here, was acting well within her discretion in concluding that the plaintiffs had not met the Rule 702 burden as to either general causation or specific causation. And there's three key findings here that are important. One, as Mr. Zimmerman acknowledged, everyone acknowledges something had to pull the trigger. The gun does not go off unless something pulls the trigger. Also, appellants, plaintiffs and their experts acknowledge that a Glock with a tabbed trigger will fire if something pulls back on the trigger, including a foreign object. And there is evidence that that has happened. And third, no one, the plaintiffs have no idea what happened in this case. They haven't presented any evidence, expert or otherwise, as to what foreign object could have interacted with the trigger. Now, this creates a number of problems in their case, not only with respect to specific causation. The first issue is general causation, because appellants haven't even established that it is more likely than not or that the incidents of these types of accidents are higher in a gun without a tabbed safety than they are with a gun that has a tabbed safety. You know, I think there was a discussion about it would be very, very difficult or remote to be able to hit the tabbed trigger. In fact, there is no evidence presented in this case that it is remote. There is no evidence that, comparing the incidence rates of misfires in these sorts of situations with a gun with a tabbed trigger or without a tabbed trigger, all that the appellants have presented is anecdotal information, evidence of the type that this Court has recognized cannot establish that general causation question. And the only testing that they purported to conduct to be able to establish their theory that it's more likely than not that a gun without a tabbed trigger would fire in an accidental situation is a highly artificial testing where they latch the gun into brackets on a table and then intentionally try to pull the trigger back. That is like the type of testing that was done in the in-ray GM ignition case, which does not in any way resemble what would be happening in the real world that would be an accident. There's no evidence. In the real world, if the experts' analysis of how the trigger tab would work, I'm having a little trouble seeing exactly how the firing object – I can imagine firing objects where if someone takes a steel bar that's just the right size and slides it in between the trigger guard and the trigger and yanks on it, that would work. That kind of firing object would set off the gun even with a trigger. But I'm having a little trouble understanding how, if you believe that the officer behaved as he said he behaved and there was some firing object that made the gun go off, which everyone seems to agree is the only way it could go off, it's a little hard for me to even hypothesize what kind of firing object could make that happen with a trigger tab that no one would notice, that wouldn't be perceptible to someone, because it seems to me it takes a pretty tricky firing object to hit the bullseye here. No, Your Honor, actually it would be the more ordinary course. What would happen is clothing gets caught in the trigger guard. If you think of a pistol, it's got a trigger guard, so there's this area. Clothing gets caught in that area and pulls back. It pulls back on everything. What would actually be unusual is if there's something that could have only touched the side of a trigger in a person who's in motion moving around that does not and has to apply force. Again, there's got to be backward force on the trigger. Everyone agrees for the six-hour P320 you need to have backward force. It can't push it on the side. It has to have backward force. So something has to contact that trigger sufficiently to put backward force of six and a half pounds on the trigger while at the same time not putting one and a half pounds of backward force on the center of the trigger in a body that's in motion in an accidental situation. Now, it may be plausible that that could happen in general, but the appellants and their plaintiffs' experts have never tested that. They put a gun on a bracket and they touch it with a tool. That's not what's happening in the real world. They have not presented any evidence in the real world that would allow for general causation opinion in this case. And, in fact, they don't even argue in their appellate brief that the district court was incorrect in excluding the general causation opinions. And a lay jury certainly can't decide that general causation opinion. So that issue, an exclusion of the general causation opinion, is a fatal problem in their case. Plus, you know, plus they've got the issue under New York law with the optional equipment doctrine. But so we've got the optional equipment doctrine. The optional equipment doctrine, as I've seen it operate, usually is the plaintiff had the choice of getting this one way or the other. And the plaintiff chose the riskier, putatively riskier piece of equipment over the option of having the safer piece of equipment. Does that why does that work for Sergeant Colwell, who did not make that choice? This Court has actually addressed that issue, Your Honor, in a case called Fasales v. Bobcat. Well, actually, it was the New York Supreme Court. I'm sorry. The site is 33 New York 3rd, 421. That was a case in which the product was rented. So the plaintiff didn't have a choice in that situation either. And the Court held the optional equipment doctrine still applies in that context. But moving on to the issue of specific causation, here, as Your Honors have recognized, the plaintiff does not present any information that would allow for determination of what specifically caused the accident if it was a foreign object. There's no evidence presented. And, Your Honor, you're correct that the district court granted summary judgment, regardless of the exclusion of expert testimony or not, because the plaintiff had not submitted any evidence, and there's no way they could submit evidence that would allow a jury to determine their theory of the case. They would have to speculate because they don't have any evidence to present. But on the specific causation opinion, again, going to the question here. If everyone agrees that there must have been a foreign object, whether it was cloth or some leather or something else, isn't it a fact that the presence of the trigger tab would make it substantially less likely that the gun would fire because of some foreign object getting caught in the trigger area when the gun was being holstered? No, Your Honor. That, again, is the general causation opinion, the general causation issue. Is it more likely because of a tabbed trigger? A tabbed trigger was not designed and it's not disputed. The purpose of a tabbed trigger, at least one purpose of a tabbed trigger, is to prevent drop falls, the gun being dropped and then firing, drop fires. I'm sorry. Now, the plaintiffs submitted or experts submitted that there's another function of the tabbed trigger also prevents these side actuations. We don't agree with that, Your Honor. That's a contested issue. For the plaintiffs to be able to make that argument, they would need to present expert evidence to prove what you are suggesting. That would be really hard, that it's very difficult to not pull the – to pull it and not have the centerpiece. They haven't presented that evidence. They didn't do the testing. They didn't do any – The expert testimony did not include that the gun would be less likely to fire from a – from cloth or other foreign object being caused there than with a – than, well, that's not one of the things that is made less likely? No. Well, the expert's opinion was that if there are places you can intentionally pull on the trigger that would pull the trigger for a SIG P320, that would not do it if there's a tabbed trigger. But they've not presented any evidence that that situation of intentionally trying to find a place on the trigger to pull is something that happens in the real world. Because, again, in the real world, for there to be an accidental discharge, something gets caught inside the trigger guard and pulls back. And that – there has to be some sort of force applied and some torque or some tension to do that. You can't have just something brush against the side. That's not going to create the backward force. And it's got to be six and a half pounds of backward force on the trigger in order for the P320 to fire. That's not a brush on the side, and there hasn't – certainly hasn't been any evidence presented or – But to use, I guess, Judge Lynch's strike zone analogy –  I mean, there's no dispute, I suppose, that the strike zone for the Glock with the tabbed trigger is smaller than the strike zone for a SIG Sauer. Yes, if you're talking about a stationary gun and a deliberate attempt to move – to push back. But in an accidental situation, you're not having a stationary gun. You have a gun in motion. You have a body in motion. And whether it is realistic or a real situation that you're going to have something that only travels with the body and the gun and only touches on the side and provides the force back, that's their theory. But there's no evidence. There's no expert analysis to support it. There's no expert comparison of the incidence rates that show – But you're saying this is all speculation and that – It is – You know, you can do the math, but if that's all you need to do, is if the strike zone for one is smaller than the strike zone for the other, then there will always be a defect, I guess, right? Well, no, Your Honor. It's not the math of the distance of the strike zone. It is what happens in the situation of an accidental discharge. What – how does a foreign object interact with a trigger to pull it back? Again, it has to get inside the trigger guard and it has to have some force behind it. It can't just brush. It has to pull back. That means it's usually catching inside the guard, so the whole guard is catching it and it's pulling back on the whole trigger. If it does that, it hits the entire trigger. It's not one small part of it. The plaintiff's theory is that there's something on the side that doesn't get into the trigger guard completely but somehow kind of brushes up against the side of it. That's their theory. But they've actually not tested that theory in any way. Their experts haven't tested that theory. And the district court properly recognized they've not established even that general causation principle. They don't have reliable expert testimony on that issue. And that was well within her discretion to decide that. So without that evidence of general causation, you don't even get to specific causation. You can't assume that, in fact, this strike zone is narrower and therefore it's less likely to actuate. They've not established that in a real-world scenario. That's what they would need to do for general causation. But they've not. And for specific causation, certainly you need to do the calculation of whatever foreign object they're speculating occurred, where it hit the trigger, and whether or not it would have been able to put 6.5 pounds of backward force on the trigger while the gun's in motion, while the person's in motion, without it ever touching a bunch of the triggers so as to give 1.5 pounds on the bladed trigger. That is a pretty complex physics problem. It kind of takes me back to nightmares of physics in high school, of force that you'd have to do a calculation for. Lots of data that you'd have to do on that. It's a difficult expert question. But here, even worse, and specifically in this case, there's not a witness to even provide the data that you would input into that equation. That's what the district judge focused on when she ultimately issued a summary judgment ruling. We don't have any evidence of what this foreign object was or how it interacted with the trigger to begin with. So a jury can't even speculate. It doesn't matter whether you have expert evidence or not. You don't have evidence upon which an expert can reliably reach a conclusion. You don't have evidence which a jury could even look at to address that issue. And that also goes to briefly the point that on the failure to consider the statement of the undisputed facts, the only issue that the plaintiff's raised is the discrepancy between the police department report and the EMS report and what the plaintiff testified to. But in reaching her summary judgment ruling, the district court assumed that the plaintiff's testimony was correct. So that's not even an issue here. She assumed it was correct, but she properly recognized some foreign object under that theory pulled back on the trigger. You don't know what it is. Your experts acknowledge that foreign objects can pull back on the trigger with guns that have tabbed safety, tabbed triggers. And you've not established in any way that that's, first of all, more likely to happen in general with a SIG P320 or in this case that it is the cause of this accident. And so for that reason, the district court should properly exercise its discretion in its analysis of the evidence, and the district court's ruling should be affirmed. Thank you. Thank you, Mr. Lasker. All right. We'll hear from Mr. Zimmerman for two minutes of rebuttal. Thank you. It is not opinion that the gun cannot fire if the trigger isn't pulled in the area where the tab is located. That is not opinion. That is something that both sides concede and agree upon. And the issue is, it is substantially less likely with a tab trigger that the gun is going to fire in a situation where a foreign object contacts it when it is holstered. The experts, the expert, Mr. Tertin, used the term highly improbable in his analysis, but like in Slutowski, like in Davis, this is not a complex chemical analysis or calculus analysis. There are far greater and more complex cases that did not require expert testimony on this issue. Jarvis v. Ford, which was an automobile defect sudden acceleration case, the plaintiff was able to testify. Castelli v. Land Rover, another auto defect case. I'm sorry. No expert testimony was required on the issues of causation. Buckley v. GMC, which was cited by both parties. Expert testimony on proximate causation in a design defect case is not always required. A jury may find causation solely on the basis of characteristics of the product and plaintiff's description of how the accident happened. In Fariner's, F-A-R-Y-N-I-A-R-Z, the issue was a shoelace that could have contacted a pull tab. And the Court noted on the facts here, expert testimony is not needed for a jury to find that a sneaker with excessively long shoelaces, which could become caught on the pull tab, is defectively designed. The defense brief cites Martens for the contention that in nearly every case, expert testimony is required on causation. That is not what Martens held. Martens discussed whether the defect requires expert testimony. There will be experts coming in to talk about the characteristics of the gun. The main issue for this Court to decide is whether contact with a tab is a complex issue that is too complex for the jury. In Slutowski, as the ---- But I guess the problem I seem to still have trouble getting past is you're just asking the jury to speculate as to what it was that caused this, and then you're saying that, you know, out of a variety of causes, potential causes, this safety would have prevented some of them. But I don't think that's enough, is it? So if the issue is we need to prove what the foreign object is, then I agree with you. We do not have evidence as to what the foreign object is. What we can do is the jury, just as the Court noted in Slutowski, the jury can take the gun, as was done in a trial in the Northern District of Georgia in Lange. They can put it in the holster. They can see how much side area there is for a foreign object to be able to get near that trigger. In what angle could a foreign object get near that trigger? Can a foreign object not only get into that gap, but then make a left-hand turn and take that strike zone and ultimately shrink it to one-ninth of the size and hit it on there? So the issue ---- So you had an expert, presumably, who could have done all these things, but you didn't. We had an expert who conducted ---- You're going to let the jury try to figure that out on their own. We had experts who conducted testing on the surface area of the trigger and how the tab reduces it in terms of surface area. Right. But again, that's a math question. Understood. I could do that. Fair. And I didn't take AP Physics. So I guess I'm trying to figure out what it is that you want the jury to be able to figure out what the cause was without any help from an expert, right? An expert isn't required for this case. Well, maybe it's not required, but it certainly hasn't been offered here, right? The testing that you're describing has not been offered. Yes, Your Honor. Thank you. Okay. All right. I thought you had something else you wanted to say, but that's fine. We will reserve decision. Thank you both. Well earned. Thank you.